UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

vs.                                                    No. 20-cr-538 (PGG)

DONNELL RUSSELL,

        Defendant.

---

**DEFENDANT RUSSELL'S OPPOSITION TO THE GOVERNMENT'S
MOTIONS *IN LIMINE***

Dated:      July 5, 2022      /s/ Michael G. Freedman
                                   THE FREEDMAN FIRM PC
                                   800 Wilshire Blvd., Suite 1050
                                   Los Angeles, CA 90017
                                   Telephone: (213) 816-1700
                                   Facsimile: (213) 816-1706
                                   E-Mail: michael@thefreedmanfirm.com

                                   Attorney for Defendant Donnell Russell

## TABLE OF CONTENTS

INTRODUCTION …………………………………………………………. 1

ARGUMENT …………………………………………………………. 1

    I.      The 911 Call Is Not Admissible …………………………………… 1

        A. The 911 Call Is Not a Present Sense Impression ……………… 1

        B. The 911 Call Is Not an Excited Utterance …………………….. 4

        C. It Is Premature to Admit the 911 Call as a Prior Consistent
           Statement ………………………………………………………… 8

    II.     Defendant's Other Alleged Conduct Is Not Admissible Either as
           Direct Evidence or Under Rule 404(b) ………………………… 8

        A. The Alleged Conduct Does Not Qualify as Direct Evidence … 8

        B. The Alleged Conduct Does Not Qualify as 404(b) Evidence .. 12

    III.    CC-2's Statements Are Not Admissible ……………………….. 16

CONCLUSION …………………………………………………………… 18

# TABLE OF AUTHORITIES

*Crawford v. Washington*, 541 U.S. 36 (2004) ………………….……………  4

*Idaho v. Wright*, 497 U.S. 805 (1990) ……………………………………….  4, 6

*John v. Masterson*, No. 08 Cr. 141 (TLM), 2010 WL 1957876

    (D. Conn. May 14, 2010) ……………………………………………  6

*Old Chief v. United States*, 519 U.S. 172  (1997) ……………………….  15

*United States v. Birnbaum*, 337 F.2d 490 (2d Cir. 1964) …………….………  17

*United States v. Brennan*, 798 F.2d 581 (2d Cir. 1986) ………….…………  11

*United States v. DeVaugn*, 579 F.2d 225, 227 (2d Cir. 1978) …………..……  16

*United States v. Graham*, 2015 WL 6161292 (S.D.N.Y. Oct. 20, 2015) ……....  2

*United States v. Grossman*, 843 F.2d 78, 83 (2d Cir. 1988) …………………  16

*United States v. Harper*, No. 05 Cr. 6068L, 2009 WL 140125

    (W.D.N.Y. Jan. 20, 2009) …………………………………………...  6

*United States v. Heinemann*, 801 F.2d 86 (2d Cir. 1986) ………………..…..  17

*United States v. Johnson*, 469 F. Supp. 3d 193 (S.D.N.Y. 2019) ……....…  9, 10, 17

*United States. v. Jones*, 299 F.3d 103 (2d Cir. 2002) ………………..…………..  2

*United States v. Joy*, 192 F.3d 761 (7th Cir 1999) ………………….…………  5

*United States v. Lieberman*, 637 F.2d 95 (2d Cir. 1980) ……………….…..  17

*United States v. Martinez*, 311 F. Appx 378 (2d Cir. 2008) …………………  8

*United States v. Mejia-Valez*, 855 F. Supp. 607 (E.D.N.Y. 1994) ……………  2, 3

*United States v. Obayagbona*, 627 F. Supp. 329 (E.D.N.Y. 1985) …………..  2, 3

*United States v. Parker,* 936 F.2d 950 (7th Cir. 1991) ………………….....  3

*United States v. Petrucelli*, 97 Fed. Appx. 355 (2d Cir. 2004 ) ……………  7

*United States v. Pitre*, 960 F.2d 1112  ……………………………………  12

*United States v. Puco*, 453 F.2d 539 (2d Cir. 1971) ………………………… 14

*United States v. Saneaux*, 365 F. Supp. 2d 493 (S.D.N.Y. 2005) ………………16

*United States v. Steele*, 216 F. Supp. 3d 317 (S.D.N.Y. 2016) …………………  5

*United States v. Tocco*, 135 F.3d 116 (2d Cir. 1998) …………………………  7

*United States v. Towne*, 870 F.2d 880 (2d Cir. 1989) ………………………….. 11

*United States v. Williams*, 577 F.2d 188 (2d Cir. 1978)  ………………………  14


Fed. R. Evid. 403 …………………………………………………  14, 15, 17

Fed. R. Evid. 404(b) ………………………………………………  10, 12, 14

Fed. R. Evid. R. 803(1) …………………………………………  1, 2, 3

Fed. R. Evid. 803(2) ……………………………………………….  4, 7, 8

**INTRODUCTION**

Defendant Donnell Russell respectfully opposes the government's motions *in limine*. First, the theater employee's 911 call after the alleged threat call is not admissible as a present sense impression or an excited utterance. Second, the allegations against Mr. Russell from after the screening are not admissible either as direct evidence or under Rule 404(b). Third, CC-2's statements were not in furtherance of the charged conspiracy, which had ended, and there is no basis to conclude that CC-2 was acting as Mr. Russell's agent.

**ARGUMENT**

**I. The 911 Call Is Not Admissible[1]**

**A. The 911 Call Is Not a Present Sense Impression**

For the 911 call to be admissible as a present sense impression, it must be "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. R. 803(1). Statements that qualify as present sense impressions under Rule 803(1) "are considered to be trustworthy because the contemporaneity of the event and its description limits the

---

[1] Separately, Mr. Russell also seeks to preclude any testimony regarding the 911 caller's opinion that the call he received constituted a threat, as detailed in Mr. Russell's Motion *In Limine* No. 2 (ECF No. 50). Because the 911 call itself features this opinion, it should also be excluded on that ground for the reasons discussed in Mr. Russell's motion.

possibility for intentional deception or failure of memory." *United States v. Graham*, 2015 WL 6161292 at *7 (S.D.N.Y. Oct. 20, 2015) (citing *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002).

> The theory behind this exception is essentially twofold. First, the immediacy requirement reduces the opportunity for reflection, and thus minimizes the likelihood of deception or fabrication on the part of the declarant. *See* Fed.R.Evid. 803(1) Advisory Committee Note ("substantial contemporaneity of event and statement negative the likelihood of deliberate or conscious misrepresentation"); *United States v. Medico*, 557 F.2d 309, 315 (2d Cir.), cert. denied, 434 U.S. 986, 98 S.Ct. 614, 54 L.Ed.2d 480 (1977). Secondly, immediacy also greatly reduces the likelihood that the declarant will have inaccurately remembered the event in question. *See United States v. Blakey*, 607 F.2d 779, 785 (7th Cir.1979); 4 David W. Louisell & Christopher B. Mueller, Federal Evidence, § 437, at 483 (1980).

*United States v. Mejia-Valez*, 855 F. Supp. 607, 613 (E.D.N.Y. 1994).

Here, the 911 call was not made contemporaneously or immediately thereafter. *United States v. Obayagbona*, 627 F. Supp. 329, 340 (E.D.N.Y. 1985) ("Rule 803(1) provides that 'immediately thereafter' must be close enough to allow

2

an inference of spontaneity.") The 911 caller chose to wait fourteen minutes after hearing the threat call to report it. He chose to delay until the general manager gave him confirmation to do so. He did not call at the first opportunity and it was not even his first reaction after receiving the alleged threat call. The first thing he did was navigate his employer's bureaucracy and ask a superior for guidance. This voluntary and unnecessary delay vitiates the statement's contemporaneity.

Nor was the 911 made "immediately after" the incident as Fed. R. Evid. 803(1) contemplates. In cases where the immediacy requirement is satisfied despite protracted delay, courts look to whether the statements are corroborated by other evidence, which here they are not. *See Mejia-Valez*, 855 F. Supp. at 614 (admitting statement made after approximately twenty minute delay as present sense impression because the statement was corroborated by extrinsic evidence, including a separate 911 call made immediately after the incident); *United States v. Parker,* 936 F.2d 950, 954 (7th Cir. 1991) (admission of statements under Rule 803(1) "buttressed by the intrinsic reliability of the statements"); *United States v. Obayagbona*, 627 F. Supp. 329 (E.D.N.Y. 1985).

The government relies upon *United States v. Scott*, No. 14 Cr. 494 (SAS), 2014 WL 6765960, (ECF No. 44 at pp. 9-10) to suggest (erroneously) that a 911 caller's purpose in calling 911 to "inform police about events that just transpired, so that they might address the situation," bears on contemporaneity. But *Scott* does

3

not apply here because the court in that case addressed the reason for the call not to determine contemporaneity but to determine whether the statements were testimonial, triggering Sixth Amendment protection under *Crawford v. Washington*, 541 U.S. 36 (2004).

### B.  The 911 Call Is Not an Excited Utterance

The 911 call does not qualify as an excited utterance because the caller was not in 1) an excited state resulting from 2) an exciting or startling event.  An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2).  Excited utterances are admissible because such they are made "under circumstances that eliminate the possibility of fabrication, coaching, or confabulation, and . . . therefore the circumstances surrounding the making of the statement provide sufficient assurance that the statement is trustworthy and . . . cross-examination would be superfluous." *Idaho v. Wright*, 497 U.S. 805, 820 (1990).

The 911 recording here reveals that the caller was not in an excited state when he spoke with the dispatcher. The 911 caller's chief concern was not the threat but rather not breaking the chain of command by calling 911 without permission from a supervisor. That is the sole reason he waited fourteen minutes to call 911, as the recording reveals. A reasonable inference from this delay is that if

the caller's manager never gave him permission, he would not have called 911. His choice to defer the decision to his manager and wait as long as he did reveals he was not even sure if the threat-call was serious enough to justify a 911 call. This is inconsistent with someone in a startled state arising from an imminent threat.

If the 911 caller was in an excited state from the threat, he would not have prioritized his job performance over his own life and the lives of those at the venue. He would not have deliberated during the call on the "liability" consequences of the venue's response, as he did, or editorialize the threat as "alleged" and as a "threat that had not been proven."

The 911 caller's reflective words and calm voice evince his unstartled, reflective state of mind. While a declarant remaining "composed during [a] call does not prove that the [declarant] was no longer in an excited state," *United States v. Steele*, 216 F. Supp. 3d 317 (S.D.N.Y. 2016), the government provides no authority to infer that a calm voice is irrelevant to the Court's determination. *See United States v. Joy*, 192 F.3d 761, 766 (7th Cir 1999) ("even during the call the excitement continued, as there was yelling in the background. Additionally, Paul Joy's responses to the dispatcher's questions were short and quick, further indicating that he was not capable of deep reflection at that time. Thus, there was an adequate basis for the district court to believe that Paul Joy's statements were

sufficiently spontaneous, excited, and impulsive, and that they were not the product of reflection or deliberation.").

Having the capacity to calmly reflect and editorialize the threat to the 911 dispatcher as he did, the caller's statements were clearly not made "under circumstances that eliminate the possibility of fabrication, coaching, or confabulation." *Idaho v. Wright*, 497 U.S. at 820.

Nor was the event itself "startling" within the meaning of the statute. The government asserts that the threat call constituted a startling event *per se*. But how can that be if the caller had reason to doubt its veracity, acted consistently with that doubt, and calmly reflected on the threat to the 911 dispatcher?

For support, the government analogizes the allegations here to *John v. Masterson*, No. 08 Cr. 141 (TLM), 2010 WL 1957876 (D. Conn. May 14, 2010) and *United States v. Harper*, No. 05 Cr. 6068L, 2009 WL 140125 (W.D.N.Y. Jan. 20, 2009). But neither case is on point. *Masterson* involves statements leading up to and during a physical altercation, with "descriptions of events as they unfolded." *Harper* involved a 911 caller reporting that her son had just driven past her and had just called her with a threat to shoot her and her husband at their home nearby. The 911 caller there called as soon as she could and acted consistently with someone who believed the threat.

The 911 caller here was not so sure. His chief concern was not the threat but preserving his chain of command and calling 911 only after receiving permission. That is the sole reason he waited fourteen minutes to call 911, as the call itself reveals. His choice to defer the decision to his manager for as long as necessary reveals 1) he was not even sure if the threat-call was serious enough to justify a 911 call; and 2) he did not feel pressed for time.

The 911 caller's actions belie the characterization of the threat call as a startling event. The venue had been receiving phone calls throughout the day seeking to have the film screening stopped. The screening was also private, with a small guest list. It was therefore apparent during the fourteen-minute delay that there was no one present with a gun. The longer the delay went on, the more apparent it became to the 911 caller that no one was going to "shoot up" the place. This context gave the 911 caller reason to believe it was not a genuine threat, but rather an attempt to have the screening delayed. It thus was not *per se* "startling" pursuant to Fed. R. Evid. 803(2).

Accordingly, the government fails to establish that the alleged threat amounted to the kind of experience that is necessarily startling enough to trigger an "excited state" within the meaning of FRE 803(b). *See United States v. Petrucelli*, 97 Fed. Appx. 355 (2d Cir. 2004) (admitting murder victim's statement she had been stabbed as an excited utterance); *United States v. Tocco*, 135 F.3d 116 (2d

Cir. 1998) (admitting statements that people were trapped in a burning building as an excited utterance); *United States v. Martinez*, 311 F. Appx 378, 379 (2d Cir. 2008) (admitting description of a murder that occurred forty minutes prior).

Thus, the 911 call does not qualify as an excited utterance because the 911 caller was not in an excited state when he made the call, and the threat-call did not amount to a startling event within the meaning of R. 803(2).

### C. It Is Premature to Admit the 911 Call as a Prior Consistent Statement

As the government notes, whether the 911 call is admissible as prior consistent statement depends on the cross-examination of the 911 caller. Mr. Russell thus objects to its admissibility on these grounds at this time, and reserves the right to further argue against its admissibility at trial.

## II. Defendant's Other Alleged Conduct Is Not Admissible Either as Direct Evidence or Under Rule 404(b)

### A. The Alleged Conduct Does Not Qualify as Direct Evidence

The government seeks to admit evidence that after the December 4, 2018 alleged threat call, and prior to the January 3, 2019 national airing of "Surviving R. Kelly," Mr. Russell attempted to intimidate alleged victims of Mr. Kelly. The government provides two alleged examples: 1) on December 21, 2018, Mr. Russell

used the Colon Dunn email account to email an alleged victim of Mr. Kelly with the subject "Your only warning!!!" and attached an exhibit depicting various mugshots of the alleged victim for arrests including, *inter alia*, extortion and obstruction, referring to the recipient as a "life long criminal who has been arrested and convicted of several crimes;" and 2) on January 3, 2019, Mr. Russell emailed another victim, instructing her to "Pull the plug . . . we have info on you and everyone. That will be good for you."

This evidence does not qualify as direct evidence. The threat call and the conspiracy to make the threat call terminated once the threat call was allegedly made and the theater evacuated. The proffered evidence therefore cannot be a continuation of the December 4, 2018 alleged threat call.

The proffered evidence is not "inextricably intertwined" with the threat call because it is not "necessary to understand the charged transaction." *United States v. Johnson*, 469 F. Supp. 3d 193, 204 (S.D.N.Y. 2019) (citations omitted). The court in *Johnson* explained:

> "Courts in this District employ a narrow construction in determining whether uncharged crimes are direct evidence of charged offenses. *See United States v. Martoma*, 12 Cr. 973 (PGG), 2014 U.S. Dist. LEXIS 1568, 2014 WL 31191, at *3 (S.D.N.Y. Jan. 6, 2014). For example, uncharged conduct is not 'inextricably

intertwined' with charged conduct simply because it 'provides context or is relevant' to charged conduct. Accordingly, 'numerous courts in this circuit . . . [have] found it necessary to conduct Rule 404(b) analysis of uncharged criminal activity that merely provided context or was somehow relevant to the charged conduct.' *Kassir*, 2009 U.S. Dist. LEXIS 66021, 2009 WL 976821, at *2 (citations omitted). In deciding whether uncharged conduct is 'inextricably intertwined' with charged conduct[,] . . . courts have considered whether '[the] details of the uncharged transaction are necessary to understand the charged transaction.' *Martoma*, 2014 U.S. Dist. LEXIS 1568, 2014 WL 31191, at *3 (quoting *United States v. Stein*, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007))." 469 F. Supp. 3d 193, 204 (S.D.N.Y. 2019).

*Id.*

Mr. Russell has stated publicly that he sought to stop the Neuehouse theater from screening the "Surviving R. Kelly" documentary. The record is therefore clear that the motive to make the threat call was to stop the film screening. Consequently, the proffered evidence is unnecessary to understand motive, intent, or any other aspect of the "charged transaction." *Johnson*, 469 F. Supp. 3d at 204.

Therefore, the proffered evidence is not "inextricably intertwined" with the charged conduct. *Id*.

Nor does the proffered evidence arise from the same transaction or "complete the story of the crime on trial." *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989). To the contrary, these incidents are not even "relevant to some disputed issue in the trial." *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (citations omitted). The only disputed issue relevant to the charges is whether Mr. Russell intentionally communicated a threat and conspired to communicate a threat to a commercial venue, namely Neuehouse Madison Square. The "story of the crime on trial" here ended when the alleged crime ended: December 4, 2018. The proffered evidence of unrelated threats allegedly made weeks after the charged crime are therefore beyond the scope of this case. The proffered evidence offers no "crucial background information" and does not lend coherence to the "basic sequence" of the charged crime, which is clear without it. To the contrary, the evidence bloats the narrative with extraneous allegations.

For the foregoing reasons, the proffered evidence does not constitute direct evidence of the crimes charged.

## B. The Alleged Conduct Does Not Qualify as 404(b) Evidence

In *United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992), the Second Circuit summarized the steps a court takes in determining the admissibility of evidence under Rule 404(b):

> First, the district court must determine if the evidence is offered for a proper purpose, one other than to prove the defendant's bad character or criminal propensity. If the evidence is offered for a proper purpose, the district court must next determine if the evidence is relevant to an issue in the case, and, if relevant, whether its probative value is substantially outweighed by the danger of unfair prejudice. Finally, upon request, the district court must give an appropriate limiting instruction to the jury.

The Government offers the evidence to show intent, motive, and identity under Rule 404(b). The proffered evidence establishes none of these things. Even assuming, *arguendo*, that Mr. Russell made the December 21, 2018 and January 3, 2019 threats, the prosecution fails to establish that the intent and motive there are the same as Mr. Russell's intent and motive to make the December 4, 2018 threat call.

The government suggests that Mr. Russell's motive for threatening to disclose personal information was the same as his motive to stop the film

screening. But the individuals Mr. Russell allegedly threatened with "exposing information" had no control over the private screening or national premiere of "Surviving R. Kelly." Mr. Russell therefore had no incentive to threaten these alleged victims for the purpose of having them stop a private screening or national premiere of "Surviving R. Kelly" they did not have the power to stop. Nevertheless, the government claims this evidence establishes that Mr. Russell "doubled down" on his efforts after December 4, 2018 to stop the screening from proceeding to national release on January 3, 2019.

The government fails to establish that the motive for the proffered threats are to advance the threat-call conspiracy rather than an unrelated aim beyond the scope of the documentary. For example, an accuser of Mr. Kelly filed a civil lawsuit against Mr. Kelly in Brooklyn, and Mr. Russell is charged in the Eastern District of New York with harassing that accuser with threats to disclose private information. The government's theory there is that Mr. Russell's motivation was to stop that accuser from pursuing a civil suit against Mr. Kelly. The government here is ignoring the actual context of Mr. Russell's uncharged conduct and supplanting its own conclusory, self-serving theory of motive unsupported by the facts.

Contrary to the government's theory with respect to identity, the proffered evidence does *not* rebut a defense argument that Mr. Russell is not the one who made the threat call. Even accepted as true, the proffered evidence offers no logical

inference that Mr. Russell was more likely to call in a gun threat than any of his alleged co-conspirators or other of Mr. Kelly's supporters who share similar animus toward Mr. Kelly's accusers. A threat to disclose private information does not indicate a likelihood to make a gun threat. Any logical inference to the contrary calls for the jury to associate the two threats based on their similarity. Such an inference would be inflammatory and unfair. The potential for prejudice is "greatly enhanced" where the uncharged offense is similar to the one for which the defendant is on trial. *See United States v. Puco*, 453 F.2d 539, 542 (2d Cir. 1971).

The proffered evidence is further inadmissible to corroborate government witnesses under Rule 404(b) because the evidence does not "direct[ly]" corroborate any element of the charged offenses, or any "significant" matter before the jury. *United States v. Williams*, 577 F.2d 188, 192 (2d Cir. 1978).

Any probative value of the proffered evidence here is outweighed by the risk of unfair prejudice pursuant to Fed. R. Evid. 403. The prosecution argues these threats are not unfairly prejudicial because they are not "more sensational" or "disturbing" than the charged crimes (ECF No. 44 at p. 18, citing *United States v. Roldan Zapata*, 916 F.2d 795 (2d Cir. 1990)). To the contrary, these threats *are* more sensational and disturbing than the threat call. The threat call did not involve a real gun or a real intent to harm anyone. The 911 caller was not even sure if he should call 911 and he waited as long as necessary for approval before doing so.

By contrast, the alleged threats the government seeks to admit target specific individuals with threats to publicly disclose sensitive, private information about them that could directly impact their professional and personal lives. This is clearly more disturbing and sensational than a fake, anonymous threat to a commercial venue.

The proffered evidence here is further unfair because it clearly falls beyond the scope of what Mr. Russell is charged with in the Southern District. The evidence belongs in the Eastern District where Mr. Russell faces charges for similar allegations.[2]

Finally, the evidence risks a jury decision on "an improper basis," specifically "an emotional one." *See* Fed. R. Evid. 403 Advisory Notes; *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The more the jury hears about Mr. Russell's relationship with Mr. Kelly and his unfavorable treatment toward Mr. Kelly victims, the more likely the jury will develop a personal bias against Mr. Russell. This evidence is completely unnecessary to establish Mr. Russell's relationship with Mr. Kelly, which is public knowledge and uncontested by the

---

[2] *See also* Defendant's Motion *In Limine* No. 5, discussing the unfair prejudice Mr. Russell would suffer by the introduction of evidence relating to his own Eastern District case as well as to Mr. Kelly's case.

defense. Accordingly, the probative value of this evidence is minimal and greatly outweighed by its substantial risk of unfair prejudice.

## III.   CC-2's Statements Are Not Admissible

CC-2's statements are not admissible either based on an agency relationship with Mr. Russell or in furtherance of the charged conspiracy.  Defendant further objects to their admission in violation of his rights under the Confrontation Clause.

The statements the government seeks to admit were not in furtherance of the conspiracy because they were made after the conspiracy ended. "The touchstone of the 'in furtherance' requirement is that the statement be designed to promote the accomplishment of the conspiracy's goals." *See United States v. Saneaux*, 365 F. Supp. 2d 493, 499-500 (S.D.N.Y. 2005) ("The third preliminary requirement provides first that the hearsay statement must be made during the course of a conspiracy. This is best described as a temporal requirement. That is to say the statements cannot be made after the cessation of the conspiracy or before its formation"); *United States v. Grossman*, 843 F.2d 78, 83 (2d Cir. 1988); *United States v. DeVaugn*, 579 F.2d 225, 227 (2d Cir. 1978).

Here, the only goal of the conspiracy, as charged, was to make an interstate threat. Once that threat was carried out, there was no conspiratorial goal remaining and therefore co-conspirator statements made after the threat call are inadmissible for this purpose.  "Causal conversation about past events," "idle chatter," and

"merely narrative descriptions by one coconspirator of the acts of another" do not qualify as statements in furtherance of the conspiracy. *Johnson*, 469 F. Supp. 3d at 213, citing *United States v. Heinemann*, 801 F.2d 86, 95 (2d Cir. 1986); *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980); *United States v. Birnbaum*, 337 F.2d 490, 495 (2d Cir. 1964).

Furthermore, with respect to the agency relationship, the government offers merely a paragraph of conjecture regarding CC-2's relationship with Mr. Russell, and there is no actual evidence to prove an agency relationship. Indeed, none of the proffered statements by CC-2 establish an agency relationship. And it would be a substantial distraction for the jury to allow the government to seek to prove such a relationship.

Here, CC-2's text to Mr. Russell regarding "moves forward" was not in furtherance of the conspiracy, which had ended, and does not establish an agency relationship. Nor is it even probative under Rule 403. Likewise, the text about being "humble" provides no basis for the inference that it relates to the threat call. Next, the texts about a "mole" and "silence from you is an option" have nothing to do with any fact of consequence, and so are distracting to the jury under Rule 402. The reference to the statement about the screening being shut down was not in furtherance of the conspiracy and did nothing to aid the conspiracy. The information about the threat had already been publicized, and this statement simply

parrots the press and offers no admission and nothing illicit. It is of minimal

probative value and would distract and inflame the jury. Finally, defendant's

statement regarding Indybuild is vague and fails to establish an agency

relationship. None of these statements is admissible.

## CONCLUSION

For all the foregoing reasons, Mr. Russell respectfully requests that the

Court deny the government's motions *in limine*.


Respectfully submitted,

/s/ Michael G. Freedman
THE FREEDMAN FIRM PC
800 Wilshire Blvd., Suite 1050
Los Angeles, CA 90017
Telephone: (213) 816-1700
Facsimile: (213) 816-1706
E-Mail: michael@thefreedmanfirm.com


Attorney for Defendant Donnell Russell

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2022, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.


/s/Michael G. Freedman
Michael G. Freedman