UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

vs.

DONNELL RUSSELL,

       Defendant.

No. 20-cr-538 (PGG)

# DEFENDANT RUSSELL'S POST-TRIAL MOTIONS AND MEMORANDUM OF LAW IN SUPPORT

Dated:    August 5, 2022

/s/ Michael G. Freedman
THE FREEDMAN FIRM PC
800 Wilshire Blvd., Suite 1050
Los Angeles, CA 90017
Telephone: (213) 816-1700
Facsimile: (213) 816-1706
E-Mail: michael@thefreedmanfirm.com

Attorney for Defendant Donnell Russell

## INTRODUCTION

Defendant Donnell Russell, through counsel, and pursuant to Fed.R.Crim.P 29(c) and 33, respectfully moves the Court for a judgment of acquittal, or, in the alternative, for a new trial, as to count two.  Mr. Russell was acquitted of count one.  His motions as to count two should be granted for several reasons.  First, his motion for a judgment of acquittal should be granted because the government failed to present sufficient evidence regarding the threat call and the caller's identity for any rational trier of fact to have concluded that Mr. Russell made the threat call.  Second, the new trial motion should be granted because the PowerPoint exhibits the Court allowed the government to introduce were inadmissible and unfairly prejudiced Mr. Russell by focusing the jury's attention on Robert Sylvester Kelly and the government's guilt-by-association allegation that Mr. Russell was Mr. Kelly's manager, which he was not.

## BACKGROUND

As detailed in the indictment and complaint filed in this case, Mr. Russell was charged with one count of conspiracy to threaten physical harm by interstate communication, in violation of 18 U.S.C. § 371 and one count of threatening physical harm by interstate communication, in violation of 18 U.S.C. § 875(c), which prohibits the transmission "in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure

1

the person of another." The core allegation in the case was that Mr. Russell worked as Robert Kelly's manager and called in a threat to Neuehouse on December 4, 2018 to stop a screening of the documentary Surviving R. Kelly taking place there that evening.

Before trial, the Court granted Mr. Russell's request to employ a jury questionnaire, reasoning that:

> Given that the defendant is the alleged former manager of R. Kelly, and given that he allegedly transmitted an unlawful threat in connection with efforts to prevent the screening of a documentary, disclosing R. Kelly's sex trafficking crimes, it is apparent that this Court must take careful steps to determine whether anyone in the venire has heard of R. Kelly, has heard about the criminal case against him, has seen or heard anything about the Surviving R. Kelly documentary, has heard about the aborted effort to screen the Surviving R. Kelly documentary at NeueHouse, and if so, whether they can put these facts out of their minds and serve as a fair and impartial juror in this case.

(RT 7/14/22 at 31:8-20).

At the final pretrial conference, the Court also reserved ruling on the government's motion to admit other alleged threats by Mr. Russell under Federal

2

Rule of Evidence Rule 404(b) based on Mr. Russell's stated plan to concede at trial that he sought to stop the screening, which meant his motive and intent would not be at issue. (RT 7/14/22 at 12:16-13:15). Mr. Russell did just that at trial, conceding he wanted to stop the screening, and this evidence was not admitted.

The Court also ruled on Mr. Russell's fifth motion *in limine* that it would "not permit evidence disclosing R. Kelly's crimes involving child pornography and the sex trafficking of minors." (RT 7/14/22 at 36:9-13). The Court elaborated on this point several times in response to arguments by the government:

> I cannot permit the jury to hear about the sensational and highly disturbing crimes that R. Kelly has now been convicted of committing because I'm concerned that on the part of the jurors with respect to the nature of his crimes would swamp their ability to resolve what is actually a pretty straightforward case about whether a threat was phoned into a venue or not.

(RT 7/14/22 at 42:23-43:4).

> We're here because someone phoned in a threat to a venue that there was a man there with a gun who was going to shoot up the place. That's why we're here. We're not here because R. Kelly is a child pornographer and because he sexually abused minor females. That's not why we're here. And how exactly do you expect me to ensure a fair trial for this man if he's linked with the so-called devil? The so-called monster? The so-called sexual abuser

of countless minor females? How is that not totally going to swamp what is a very narrow issue here?

(RT 7/14/22 at 52:6-15).

The trial commenced on July 18, 2022. During the trial, the government sought to offer into evidence a series of PowerPoint presentations that Mr. Russell allegedly prepared and sent to Lifetime executives in an effort to stop the network from screening the documentary. (GEX 1409A, 1502B, 1512B, 1312, 1422, 1403). The government sought to admit this material as evidence of Mr. Russell's criminal intent. As the Court noted, "the government wishes to introduce these exhibits to demonstrate that the defendant, who allegedly prepared a number of the exhibits, did so in order to intimidate Mr. Kelly's victims." (RT 7/19/22 at 2:12-15). Mr. Russell objected on the basis of unfair prejudice for the same reasons addressed in his fifth motion *in limine*. (RT 7/19/22 at 5:7-25). Mr. Russell also objected based on the same reasoning the Court applied to the 404(b) evidence, namely that Mr. Russell was not contesting his motivation and intent to stop the screening. (RT 7/19/22 at 9:3-10:4). The Court nonetheless admitted the PowerPoint presentations into evidence.

Also during the trial, the government presented circumstantial evidence that it argued established that Mr. Russell was the individual who made the threat call. Specifically, the government introduced, *inter alia*, testimony from the recipient of

4

the threat call, an investigator to summarize call logs, and a cell site specialist to discuss cell site data for Mr. Russell's cell phones.

The jury deliberated on July 22, 2022 and returned a split verdict—not guilty on count one, conspiracy, and guilty on count two, threatening physical harm by interstate communication.

### ARGUMENT

**A. Motion for Judgment of Acquittal**

"A defendant challenging the sufficiency of the evidence bears a heavy burden, because the reviewing court is required to draw all permissible inferences in favor of the government and resolve all issues of credibility in favor of the jury verdict." *United States v. Kozeny*, 667 F.3d 122, 139 (2d Cir. 2011). A conviction must stand if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

Here, a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt. Specifically, the government failed to prove that Mr. Russell "transmit[ted] . . . any communication containing any threat . . . to injure the person of another." 18 U.S.C. § 875(c).

Drawing all permissible inferences in favor of the government, the government's case argument was essentially as follows: the threat call came from Mr. Russell's landline at either 7:37 p.m. or 7:38 p.m. and it was clear that Mr.

5

Russell made the call because his cellphones were in the vicinity of the landline at the time. But there are numerous reasons why this was not sufficient for any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

First, the only person who heard the threat call, Adrian Krasniqi, was not sure what time he received the call and could not identify the phone number associated with the threat call. But there were numerous other calls by Mr. Russell and others to the venue in the hour preceding Mr. Krasniqi's 911 call. (GEX 901, 209, 302). So the government's proof as to when the threat call was made, let alone who made it, is exceedingly thin. No rational finder of fact could have concluded that Mr. Russell made the threat call based on this thin evidence.

Second, the government offered no evidence to prove that it was Mr. Russell's voice that Mr. Krasniqi heard. Indeed, Mr. Krasniqi testified that the voice of the threat caller sounded different than on the first call he had, which was with Mr. Russell. Mr. Krasniqi specifically testified that the caller sounded different, like he was from Brooklyn, and like he was outside. (RT 7/20/22 at 221:1-25). All of this is inconsistent with the government's argument and insufficient to prove Mr. Russell made the threat call. This evidentiary deficiency is especially pronounced given that no witness could identify Mr. Russell by voice, so there was no proof that it was his voice on the threat call.

Third, the government's evidence regarding the landline used to make the threat call is inconclusive. The 1689 number appeared to be a fax number, as several pieces of evidence confirmed. (GEX 902, 1418, 301; *see also* RT 7/20/22 at 187:5-12). Rather than address this issue with evidence, the government attempted to distract the jury with cell site data about Mr. Russell's other numbers, the 5608 and 3030 numbers. (GEX 501). But that evidence just proves Mr. Russell was in the vicinity of the landline the government alleges was used to make the threat call. The cell site data does not cure the weakness in the landline evidence itself, namely that it was a fax number and there is no proof Mr. Russell was the one using it. And for the reasons discussed, there also was not sufficient evidence that either of the calls from this number was actually the threat call, let alone that Mr. Russell made it.

### B. Motion for New Trial

Rule 33 motions "are granted only in 'extraordinary circumstances,' and are committed to the trial court's discretion." *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (citation omitted).

Here, the Court was appropriately sensitive to the potential unfair prejudice Mr. Russell would suffer if the jury's attention was focused on the allegations against Mr. Kelly. It was for this reason that the Court employed a jury questionnaire and was careful to exclude evidence of the allegations against Mr.

Kelly.  Likewise, the Court wisely recognized this was a straightforward case, in part because Mr. Russell was not disputing his motive and intent to stop the screening.  For this reason, the Court also correctly tentatively excluded the government's proposed Rule 404(b) evidence of Mr. Russell's other alleged threats so long as Mr. Russell did not raise the issue of his intent, which he did not.  Nonetheless, despite these careful rulings to guard against unfair prejudice, such prejudice did result from the admission of the PowerPoint exhibits, to which Mr. Russell objected for all the same reasons discussed above and reiterated below.

First, the Court admitted the PowerPoints (GEX 1409A, 1502B, 1512B, 1312, 1422, 1403) on the theory that they demonstrated Mr. Russell was trying to intimidate Mr. Kelly's victims.  But this was irrelevant to the threat charge against Mr. Russell and thus inadmissible under Federal Rule of Evidence Rule 402.

Second, the admitted exhibits also were highly inflammatory and thus unduly prejudicial and inadmissible under Federal Rule of Evidence Rule 403.  They created the very prejudice the Court tried so carefully to guard against, namely that the narrow issue in the trial would be swamped by focusing the jury on R. Kelly and the allegations against him.  The PowerPoints pertained to Mr. Kelly's alleged victims and the allegations against him.

Third, by linking Mr. Russell to Mr. Kelly, the PowerPoints improperly swayed the jury to believe the government's allegation that Mr. Russell was R.

Kelly's manager even though the evidence did not prove this and Mr. Russell was not in fact R. Kelly's manager.

Fourth, they also were inadmissible under Federal Rule of Evidence 404(b) just like the other evidence of alleged threats that was not admitted because Mr. Russell was not disputing his motive and intent to stop the screening. This was the basis the Court noted in allowing the PowerPoints into evidence, but the issue was not in dispute and the resulting prejudice was so severe as to deny Mr. Russell his right to a fair trial. A new trial is warranted for each of these reasons.

## CONCLUSION

For the foregoing reasons, Mr. Russell respectfully requests that the Court grant a judgment of acquittal. In the alternative, Mr. Russell respectfully requests that the Court grant him a new trial.

Respectfully submitted,

/s/ Michael G. Freedman
THE FREEDMAN FIRM PC
800 Wilshire Blvd., Suite 1050
Los Angeles, CA 90017
Telephone: (213) 816-1700
Facsimile: (213) 816-1706
E-Mail: michael@thefreedmanfirm.com

Attorney for Defendant Donnell Russell

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2022, I caused a true and correct copy of the foregoing to be served by electronic means, via the Court's CM/ECF system, on all counsel registered to receive electronic notices.

<u>/s/Michael G. Freedman</u>
Michael G. Freedman